1
2
3
4
5
6
7
8

## UNITED STATES DISTRICT COURT

9

## SOUTHERN DISTRICT OF CALIFORNIA

10

11
LINDORA, LLC, a Delaware limited liability company,

Case No. 15-cv-2754-BAS-RBB

12

**OPINION AND ORDER**

Plaintiff,

13
v.

14
ISAGENIX INTERNATIONAL, LLC, an Arizona limited liability company, and ELLA NOVOKOLSKY,

15

16

Defendants.

17

18

19       This action arises from Defendant Isagenix International, LLC's ("Isagenix")

20  and Defendant Ella Novokolsky's ("Novokolsky") alleged use of Plaintiff Lindora,

21  LLC's ("Lindora") "Lean for Life" marks. Before the Court is Isagenix's motion to

22  dismiss for lack of personal jurisdiction and improper venue or, alternatively, to sever

23  the claims against Isagenix and transfer those claims to the District of Arizona. (ECF

24  No. 13.) Lindora opposes. (ECF No. 18.)

25       The Court finds the motion suitable for disposition on the papers submitted

26  and without oral argument. *See* Civ. L.R. 7.1(d)(1). For the reasons explained below,

27  the Court DENIES Isagenix's motion.

28  **I.       BACKGROUND**

Plaintiff Lindora is a Delaware limited liability company with its principal place of business in Costa Mesa, California. (First Am. Compl. ("FAC") ¶ 1.) Lindora develops, markets, and sells weight management goods and services, including meal replacement shakes, protein bars, and diet planning services. (*Id.* ¶¶ 18, 19.) Since at least 1989, Lindora has used the marks "Lean for Life!" and "Lean for Life" (collectively, the "Lindora Marks") to promote and sell its products. (*Id.* ¶ 14.) Lindora registered the "Lean for Life!" mark with the U.S. Patent and Trademark Office ("USPTO") on December 20, 1994, and registered the "Lean for Life" mark with the USPTO on April 17, 2007. (*Id.* ¶¶ 18, 19.) Lindora asserts that the marks are a vital part of the company's goodwill and reputation, signaling to consumers that the products they are purchasing come from an industry leader known for high-quality goods and services. (*Id.* ¶ 16.)

Defendant Isagenix is an Arizona limited liability company with its principal place of business in Gilbert, Arizona. (*Id.* ¶ 2.) Founded in 2002, Isagenix is a multi-billion dollar network marketing company that develops, markets, and sells a variety of weight management products, including protein shakes and dietary supplements. (ECF No. 13 ("Mot.") 4:24–5:2; ECF No. 18 ("Opp'n") Exh. B.) As a network marketing company, Isagenix relies on a network of more than 500,000 "Independent Associates," located in various states and countries, to act as sales representatives and distributors for its products. (Mot. 4:24–5:2; FAC ¶¶ 9, 21.) Isagenix Associates earn commissions and bonuses through retail sales and by referring new customers. (Opp'n, Exh. C.) These Associates must abide by a set of policies and procedures that govern how they market and sell Isagenix products. (*Id.*)

Although Isagenix has no offices, salaried employees, or real property in California, California is a key market for Isagenix products. The company has more Associates in California than in any other state, and sells more products to purchasers in California than in any other state. (FAC ¶ 9; ECF No. 8-1 ("Suppl. Adams Decl.") ¶ 9.) Isagenix holds a variety of training workshops, promotional events, and annual

conferences in San Diego, California, and in California more generally, at which the company trains Associates, recruits new Associates, and promotes new products. (FAC ¶ 10; Suppl. Adams Decl. ¶¶ 3, 4.) An estimated 12,000 Isagenix Associates reportedly attended the company's 2015 annual conference in San Diego, California. (Opp'n 5:9–15.)

Isagenix operates the website www.isagenix.com, from which it promotes Isagenix products and touts the income opportunities associated with becoming an Isagenix Associate. (FAC ¶¶ 5, 10.) Defendant Novokolsky is one such Associate who resides in San Diego County, California. (FAC ¶ 3.) Isagenix allows Associates such as Novokolsky to use www.isagenix.com as a platform for their own "back office" webpages, through which Associates can promote, sell, and order Isagenix products. (FAC ¶ 11; Mot. 5:16–21.) Novokolsky operates the back office webpage www.lean-for-life.isagenix.com as part of her sales and distribution efforts. (FAC ¶ 11.) In addition, Isagenix allegedly operates its own back office webpage at backoffice.isagenix.com from which consumers can directly place orders for Isagenix products. (ECF No. 18-1 ("Mikulka Decl.") ¶ 9.)

Lindora alleges that Isagenix has used the Lindora Marks, and confusingly similar marks, without permission, in marketing materials used to promote Isagenix products. The infringement is alleged to have taken several forms, including (1) Isagenix's use of the Lindora Marks in promotional materials on Isagenix's website, www.isagenix.com, (2) Isagenix's use of infringing marks during Isagenix training events, promotional tours, and annual conferences held in California, (3) Isagenix's use of the infringing marks in marketing materials that it provides to Isagenix Associates in California, and (4) Isagenix's approval of, or acquiescence to, the use of infringing materials on Associates' back office webpages, such as www.lean-for-life.isagenix.com. (FAC ¶¶ 9–11, 21–23, 36.) Lindora raises similar allegations against Novokolsky, alleging that she infringed the Lindora Marks on her back office webpage, and in related marketing materials. (*Id.* ¶¶ 5, 11, 36.) Finally, Lindora

alleges that Isagenix willfully infringed the Lindora Marks by continuing to use the marks after Lindora sent a cease-and-desist letter to Isagenix on October 30, 2015. (*Id*. ¶ 28.)

Based on these allegations, Lindora brings claims against both Isagenix and Novokolsky for trademark infringement under the Lanham Act, 15 U.S.C. § 1114; false designation of origin and unfair competition under the Lanham Act, 15 U.S.C. § 1125(a); trademark infringement under California common law; and unfair competition under California common law and California Business & Professions Code § 17200 *et seq*. (FAC 7–12.) Lindora also brings a claim for contributory trademark infringement against Isagenix only. (*Id*. 12–13.) Lindora alleges that Defendants' infringement has created a likelihood of customer confusion and has resulted in loss profits, damage to Lindora's goodwill and reputation, and diminution of the value of the Lindora Marks. (*Id*. ¶¶ 30, 33, 40.)

Isagenix now moves to dismiss the case for lack of personal jurisdiction and improper venue, or, alternatively, to sever the claims against Isagenix and transfer those claims to the District of Arizona.[1] Lindora opposes, and Isagenix has replied.[2]

## II.   LEGAL STANDARD

A federal court may only exercise personal jurisdiction where such jurisdiction satisfies both the forum state's long-arm statute and constitutional principles of due

---

[1] Lindora originally brought suit on December 8, 2015 against Isagenix International Products Export, Inc. ("IIPE"), a member of the same corporate family as Isagenix International, LLC. (ECF No. 1.) After IIPE moved to dismiss the complaint, (ECF No. 8), Lindora filed the operative FAC against Isagenix and Novokolsky.

[2] On March 16, 2016, two days after Isagenix filed its reply brief, Lindora filed a Notice Regarding Exhibit Attachment explaining that Exhibit J, which contains examples of Isagenix's allegedly infringing marketing materials, was not attached to Lindora's opposition brief. (ECF No. 22.) Isagenix moves to strike this Notice as untimely and prejudicial to Isagenix. (ECF No. 23.) The Court denies the motion. The allegedly infringing materials contained in Exhibit J were already filed as part of other exhibits—including Exhibit K and Exhibit M—and thus Isagenix was on notice that these materials constituted part of the allegations. The Court finds no risk of prejudice under these circumstances. The Court does, however, accept Isagenix's response to Exhibit J, which Isagenix provides in footnote 1 of its Motion to Strike. (*Id*. 2:12, n. 1.)

process. *See Lee v. City of Los Angeles*, 250 F.3d 668, 692 (9th Cir. 2001) (citation omitted). Here, California's long-arm statute permits the exercise of jurisdiction to the fullest extent permitted by the U.S. Constitution. *See* Cal. Civ. Proc. Code § 410.10 ("[A] court of this state may exercise jurisdiction on any basis not inconsistent with the Constitution of this state or of the United States.") Thus, in this case, the jurisdictional analyses under state and federal law are the same, and the inquiry centers on whether the exercise of personal jurisdiction comports with federal due process. *Picot v. Weston*, 780 F.3d 1206, 1211 (9th Cir. 2015) (citation omitted).

For a court to exercise personal jurisdiction over a defendant consistent with due process, that defendant must have sufficient "minimum contacts" with the forum state "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). In assessing minimum contacts, the Supreme Court has emphasized that "the defendant's conduct and connection with the forum State" must be such that the defendant "should reasonably anticipate being haled into court there." *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). The personal jurisdiction requirement thus protects an individual's liberty interest "in not being subject to the binding judgments of a forum with which he has established no meaningful 'contacts, ties, or relations.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985) (quoting *Int'l Shoe Co.*, 326 U.S. at 319). The nature and quality of contacts necessary to support personal jurisdiction depend upon whether the plaintiff asserts general or specific jurisdiction against the defendant. *See Picot*, 780 F.3d at 1211; *Nutrishare, Inc. v. BioRX, L.L.C.*, No. CIV. S-08-1252 WBS EFB, 2008 WL 3842946, at *2 (E.D. Cal. Aug. 14, 2008).

Under Federal Rule of Civil Procedure 12(b)(2), a defendant may move to dismiss a complaint for lack of personal jurisdiction. In opposing a Rule 12(b)(2) motion, the plaintiff bears the burden of establishing that jurisdiction is proper. *Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008). Where, as here, the court

considers the motion without holding an evidentiary hearing, "the plaintiff need only make a prima facie showing of jurisdictional facts to withstand the motion to dismiss." *Mavrix Photo, Inc. v. Brand Tech., Inc.*, 647 F.3d 1218, 1223 (quoting *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1127 (9th Cir. 2010)). In other words, "the plaintiff need only demonstrate facts that if true would support jurisdiction over the defendant." *Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995).

In resolving a Rule 12(b)(2) motion, the court may consider evidence outside the pleadings, including affidavits and other materials submitted on the motion.[3] *See Daimler AG v. Bauman*, 571 U.S. —, 134 S. Ct. 746, 752 (2014) (noting that plaintiffs opposing the motion to dismiss for lack of personal jurisdiction submitted declarations and exhibits purporting to demonstrate defendant's contacts in the forum state); *Doe v. Unocal Corp.*, 248 F.3d 915, 922 (9th Cir. 2001). "The plaintiff cannot 'simply rest on the bare allegations of the complaint,' but uncontroverted allegations in the complaint must be taken as true." *Mavrix Photo*, 647 F.3d at 1223 (quoting *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004) (quotation omitted)). Furthermore, while the court may not assume the truth of allegations that are contradicted by affidavit, *Mavrix Photo*, 647 F.3d at 1223, the court draws all reasonable inferences from the complaint, and resolves all factual disputes, in favor of the plaintiff. *Fiore v. Walden*, 688 F.3d 558, 575 (9th Cir. 2011) ("We will draw reasonable inferences from the complaint in favor of the plaintiff where personal jurisdiction is at stake, and will assume credibility."), *rev'd on other grounds*, 571 U.S. —, 134 S. Ct. 1115 (2014); *Pebble Beach Co. v. Caddy*, 453 F.3d

---

[3] The legal standard governing a Rule 12(b)(2) motion permits the district court to consider relevant materials outside the pleadings without taking judicial notice of those materials. *See Stewart v. Screen Gems-EMI Music, Inc.*, 81 F. Supp. 3d 938, 951–52 (N.D. Cal. 2015). Here, the Court has considered all relevant materials submitted by the parties in connection with the instant motion, including affidavits and exhibits. Accordingly, the parties' respective requests for judicial notice are TERMINATED AS MOOT. (ECF No. 18-3, ECF No. 21.)

1    1151, 1154 (9th Cir. 2006).

2    **III.    DISCUSSION**

3        Lindora argues that Isagenix is subject to both general and specific jurisdiction.
4 For the reasons that follow, the Court finds that while general jurisdiction is
5 improper, specific jurisdiction over Isagenix comports with federal due process.

6        **A.   General Jurisdiction**

7        General jurisdiction allows a court to hear any and all claims against a
8 defendant regardless of whether the claims relate to the defendant's contacts with the
9 forum state. *See Schwarzenegger*, 374 F.3d at 801 ("[A] finding of general
10 jurisdiction permits a defendant to be haled into court in the forum state to answer
11 for any of its activities in the world."). For general jurisdiction to exist, a defendant's
12 affiliations with the forum state must be "so 'continuous and systematic' as to render
13 them essentially at home in the forum[.]" *Daimler*, 571 U.S. —, 134 S. Ct. 746, 751
14 (2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915,
15 919 (2011)). In the case of a corporation, "[t]he paradigmatic locations where general
16 jurisdiction is appropriate . . . are its place of incorporation and its principal place of
17 business." *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1069 (9th Cir. 2015) (citing *Daimler*,
18 571 U.S. —, 134 S. Ct. 746 at 760). "Only in an 'exceptional case' will general
19 jurisdiction be available anywhere else." *Martinez v. Aero Caribbean*, 764 F.3d 1062,
20 1070 (9th Cir. 2014) (quoting *Daimler*, 571 U.S. —, 134 S. Ct. 746 at 761 n. 19).

21        Lindora concedes that California falls outside the traditional bases for general
22 jurisdiction recognized in *Daimler*—Isagenix is an Arizona corporation with its
23 principal place of business in Arizona. (FAC ¶ 2.) Nevertheless, Lindora contends
24 that Isagenix is subject to general jurisdiction on the basis of the following contacts:
25 (1) Isagenix is registered to do business in California; (2) Isagenix sells more of its
26 products to purchasers in California than in any other state; (3) Isagenix has more
27 Associates in California than in any other state; (4) Isagenix directly sells and ships
28 its products to Associates and customers in California; (5) Isagenix holds annual

conferences, training workshops, and other promotional events in California; (6) Isagenix maintains an interactive website to promote its products and provide a platform for California Associates to market Isagenix products; and (7) Isagenix's website includes a page directed specifically to California consumers regarding the company's compliance with a California consumer protection statute. (Mot. 9:2–15.) In Lindora's view, the importance of the California market to Isagenix's business, and the aggregate of the company's activities in the state, demonstrate continuous and systematic contacts such that general jurisdiction is appropriate. (*Id.* 10:11–12.)

Lindora, however, has misconceived the relevant test. The test for general jurisdiction is not whether an out-of-state corporation's in-state contacts are "in some sense" continuous and systematic, but whether the corporation's contacts "are so 'continuous and systematic' as to render [it] *essentially at home* in the forum State." *Daimler*, 571 U.S. —, 134 S. Ct. 746 at 761 (quoting *Goodyear*, 564 U.S. at 919) (emphasis added). Outside the traditional bases of general jurisdiction, this inquiry is a necessarily comparative one, "call[ing] for an appraisal of a corporation's activities in their entirety, nationwide and worldwide." *Id.* at 762, n. 20; *Ranza*, 793 F.3d at 1070 ("[T]he general jurisdiction inquiry examines a corporation's activities worldwide—not just the extent of its contacts in the forum state—to determine where it can be rightly considered at home."); Richard D. Freer, *Some Specific Concerns with the New General Jurisdiction*, 15 Nev. L.J. 1161, 1171 (2015) ("The implication arises from the Court's instruction [in *Daimler*] that a defendant's contacts with the forum are assessed holistically, in the context of its overall business."). If the magnitude of a corporation's business activities in the forum state substantially exceeds the magnitude of the corporation's activities in other places, general jurisdiction may be appropriate in the forum state. *See Daimler*, 571 U.S. —, 134 S. Ct. 746 at 761 nn. 19, 20. Absent such a showing, however, general jurisdiction will be improper. *See, e.g.*, *Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 629 (2d Cir. 2016) (determining that general jurisdiction over defendant was improper where the

– 8 –

1    number of defendant's employees in the forum represented less than 0.05% of

2    defendant's full workforce and where the amount of gross revenue that defendant

3    derived from operations in the forum never exceeded 0.107% of defendant's total

4    annual revenue); *Martinez*, 764 F.3d at 1070 (finding general jurisdiction lacking

5    where corporation's California contacts were minor compared to its other worldwide

6    contacts).

7         Here, Lindora fails to make the required comparative assessment of Isagenix's

8    business activities, or proffer facts and evidence sufficient to show that Isagenix is

9    essentially at home in California. For example, although the record indicates that

10   Isagenix sells more products in California than in any other state, and has more

11   distributors in California than in any other state, Lindora provides no information

12   regarding the nature and magnitude of Isagenix's business activities in other key

13   Isagenix markets such as New York, New Jersey, and Ontario, Canada. (Opp'n, Exh.

14   D.) Similarly, while Lindora emphasizes that Isagenix holds training workshops,

15   promotional events, and conferences in California, Lindora does not show that these

16   activities represent a more continuous and systematic affiliation with California than

17   with other states where Isagenix holds similar events. (Suppl. Adams Decl. ¶¶ 3, 4.)

18   In other words, while Lindora demonstrates that California is a key forum for

19   Isagenix's business activities, it fails to assess those contacts in light of Isagenix's

20   overall business. Without an assessment of Isagenix's business activities in their

21   entirety, even continuous and systematic contacts in California will not support a

22   finding of general jurisdiction. *See Daimler*, 571 U.S. —, 134 S. Ct. 746 at 762 n. 20.

23   *   *   *

24        In sum, Lindora has not made a prima facie showing that the magnitude of

25   Isagenix's business activities in California, as compared to other fora, is sufficient to

26   render Isagenix essentially at home in the state. Accordingly, the Court finds that this

27   is not the exceptional case where general jurisdiction can be asserted outside a

28   corporation's place of incorporation and principal place of business.

**B. Specific Jurisdiction**

Lindora argues in the alternative that specific jurisdiction is proper. "The inquiry whether a forum State may assert specific jurisdiction over a nonresident defendant 'focuses on the relationship among the defendant, the forum, and the litigation.'" *Walden v. Fiore*, 571 U.S. —, 134 S. Ct. 1115, 1121 (2014) (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 775 (1984) (internal quotation omitted)). For specific jurisdiction to exist, "the defendant's suit-related conduct must create a substantial connection with the forum State." *Id.* at 1121; *see also Nissan Motor Co. Ltd. v. Nissan Comput. Corp.*, 89 F. Supp. 2d 1154, 1158 (C.D. Cal. 2000) ("Specific personal jurisdiction may be exercised when the nature and quality of the defendant's contacts with the forum state are significant in relation to the specific cause of action.") (internal quotation and citation omitted). This connection "must arise out of contacts that the 'defendant *himself*' creates with the forum State." *Walden*, 571 U.S. —, 134 S. Ct. at 1122 (quoting *Burger King*, 471 U.S. at 475). A defendant's affiliation with the plaintiff, or with persons who reside in the forum, standing alone, is insufficient to confer specific jurisdiction. *Id.* at 1122–23.

The Ninth Circuit employs a three-prong test to assess whether a defendant's contacts with the forum state are sufficient to subject it to specific jurisdiction:

(1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;

(2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and

(3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e., it must be reasonable.

*Picot*, 780 F.3d at 1211 (citing *Schwarzenegger*, 374 F.3d at 802). Lindora

bears the burden of satisfying the first two prongs. *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1076 (9th Cir. 2011). If Lindora does so, the burden then shifts to Isagenix to present a "compelling case" that the exercise of jurisdiction would be unreasonable. *Id.* (quoting *Burger King*, 471 U.S. at 477).

### 1. Purposeful Direction

The first prong of the specific jurisdiction test refers to both purposeful availment and purposeful direction. In infringement actions, the Ninth Circuit typically employs a purposeful direction analysis. *Mavrix Photo*, 647 F.3d at 1228 (citing *Schwarzenegger*, 374 F.3d at 802). This analysis, in turn, involves application of an "effects" test that "focuses on the forum in which the defendant's actions were felt, whether or not the actions themselves occurred within the forum." *Yahoo! Inc. v. La Ligue Contre Le Racisme*, 433 F.3d 1199, 1206 (9th Cir. 2006) (en banc). Under this test, which derives from the Supreme Court's decision in *Calder v. Jones*, 465 U.S. 783 (1984), "the defendant allegedly must have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *CollegeSource*, 653 F.3d at 1077 (internal quotation marks omitted). The Court addresses these requirements in turn.

#### a. Intentional Act

Lindora must first sufficiently allege that Isagenix committed an intentional act. In the context of the *Calder* test, an intentional act is "an external manifestation of the actor's intent to perform an actual, physical act in the real world, not including any of its actual or intended results." *Washington Shoe Co. v. A-Z Sporting Goods Inc.*, 704 F.3d 668, 674 (9th Cir. 2012); *see also Schwarzenegger*, 374 F.3d at 806. Lindora alleges that Isagenix provided its California Associates with infringing marketing materials, held training workshops and promotional events in California using the Lindora Marks, and operates a website where the infringing marks are used. These are sufficient allegations of intentional acts within the meaning of *Calder*. *See Mavrix Photo*, 647 F.3d at 1229 (finding an intentional act where defendant reposted

1   allegedly infringing photos on a website); *California Brewing Company v. 3*
2   *Daughters Brewing LLC*, No. 2:15-cv-02278-KJM-CMK, 2016 WL 1573399 (E.D.
3   Cal. Apr. 18, 2016) (marketing and selling products that allegedly infringed
4   plaintiff's trademark constituted intentional acts under *Calder*); *Lang v. Morris*, 823
5   F. Supp. 2d 966, 971 (N.D. Cal. 2011) (creation of paintings that allegedly infringed
6   plaintiffs' copyright "easily satisfied" intentional act requirement). Although
7   Isagenix contends that any use of the Lindora Marks in connection with these acts
8   did not constitute infringement, this prong of the *Calder* test focuses on whether an
9   act was performed, not whether the act produced a particular result. *See Washington*
10  *Shoe*, 704 F.3d at 673–74 (quoting *Schwarzenegger*, 374 F.3d at 806). Thus, the
11  Court finds the first prong of the *Calder* test satisfied.

12      **b. Express Aiming**

13      The second prong of the purposeful direction inquiry is whether the defendant
14  expressly aimed its conduct at the forum state. The Ninth Circuit has emphasized that
15  express aiming requires "something more" than "a foreign act with foreseeable
16  effects in the forum state." *Washington Shoe*, 704 F.3d at 675 (quoting *Bancroft &*
17  *Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082, 1087 (9th Cir. 2000)). In assessing
18  whether a defendant has done "something more," courts consider several factors,
19  including "the interactivity of the defendant's website, the geographic scope of the
20  defendant's commercial ambitions, and whether the defendant 'individually targeted'
21  a plaintiff known to be a forum resident." *Mavrix Photo*, 647 F.3d at 1229 (citation
22  omitted). Express aiming can be shown where a corporation "continuously and
23  deliberately" exploits the forum state's market for its own commercial gain. *Id.* at
24  1229–30 (citing *Keeton*, 465 U.S. at 773–74, 781).

25      Here, the Court finds that Isagenix has expressly aimed the allegedly infringing
26  conduct at California. Isagenix sells more products to consumers in California than
27  in any other state, and has more Associates in California than in any other state.
28  (Suppl. Adams Decl. ¶ 9.) The record shows that Isagenix holds training workshops,

promotional tours, and annual conferences in California, events designed to increase product sales and expand Isagenix's network of Associates in the state. (Opp'n, Exh. E.) Several of the "Isagenix Millionaires" touted on Isagenix's website as Associate success stories are residents of California. (*Id.* Exh. F.) In addition, Isagenix's website contains a page directed specifically to California consumers regarding Isagenix's compliance with a California consumer protection statute. (Mikulka Decl. ¶ 13.) Taken together, this is strong evidence of Isagenix's efforts to target the California market. The alleged infringement has occurred not in a vacuum devoid of economic context, but rather as part of Isagenix's efforts to exploit an important consumer base for commercial gain. This satisfies the express aiming prong. *See Mavrix Photo*, 647 F.3d at 1229–31 (citing *Keeton*, 465 U.S. at 773–74, 781); *Taubler v. Giraud*, 655 F.2d 991, 994 (9th Cir. 1981) (finding purposeful direction where the totality of defendants' business activities indicated a deliberate effort to target the California market).

There is an additional basis on which the express aiming requirement is satisfied. Lindora alleges that Isagenix continued using the Lindora Marks after Lindora sent a cease-and-desist letter to Isagenix on October 30, 2015 explaining that Lindora owned the marks. (FAC ¶ 28; Mikulka Decl. ¶ 14.) The letter was sent to Isagenix from Lindora's counsel in California, and included copies of the trademark registrations identifying Lindora as a California-based company. (Opp'n, Exh. M.) Thus, at the point Isagenix received the letter, Isagenix knew that Lindora owned the Lindora Marks, and that it controlled its trademark rights from California. This knowledge is sufficient to turn what might otherwise have been general economic activity into "individualized targeting" of Lindora. *See Washington Shoe*, 704 F.3d at 678–79; *Adobe Sys. Inc. v. Blue Source Grp., Inc.*, 125 F. Supp. 3d 945, 961–62 (N.D. Cal. 2015). Such targeting satisfies the express aiming requirement. *See, e.g.*, *Dole Food Co. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002) ("[T]he 'express aiming' requirement . . . is satisfied when 'the defendant is alleged to have engaged

1  in wrongful conduct targeted at a plaintiff whom the defendant knows to be a resident

2  of the forum state.'") (quoting *Bancroft & Masters*, 223 F.3d at 1087).

3        Isagenix makes two main arguments regarding this prong of the purposeful

4  direction inquiry. First, Isagenix argues that Lindora has not shown express aiming

5  because the marketing materials at issue were created, approved and distributed from

6  Arizona, and because the content of Isagenix's website is directed from Arizona.

7  (Mot. 10:20–24.) This argument is unpersuasive. The fact that the allegedly

8  infringing materials and website were created in one forum, without more, has little

9  bearing on the question of express aiming. Indeed, the very purpose of the purposeful

10 direction analysis is to determine whether acts committed *outside* the forum

11 nonetheless had an effect *inside* the forum such that specific jurisdiction is proper.

12 *See Yahoo! Inc.*, 433 F.3d at 1206; *Schwarzenegger*, 374 F.3d at 803 ("[D]ue process

13 permits the exercise of personal jurisdiction over a defendant who 'purposefully

14 directs' his activities at residents of a forum, even in the 'absence of physical

15 contacts' with the forum.") (quoting *Burger King*, 471 U.S. at 476). Here, Lindora's

16 allegations, and the reasonable inferences drawn from materials submitted on the

17 motion, supports a finding that the allegedly infringing materials were used as part

18 of an effort to exploit the California market. This is sufficient for express aiming,

19 regardless of where the marketing materials originated.

20       Second, Isagenix contends that its contacts with Isagenix Associates based in

21 California do not constitute contact with California itself and so cannot support

22 personal jurisdiction. (Mot. 10:24–11:2.) This argument misconceives the nature of

23 the contacts at issue. Isagenix is a network marketing company, and its California-

24 based Associates—who serve as distributors and sales representatives—are the very

25 means by which the company promotes and sells its products in the state. Isagenix

26 recruits these Associates, provides them marketing materials and training

27 opportunities, and requires them to abide by specific policies and procedures that

28 govern how Isagenix products are marketed and sold. (Opp'n, Exhs. C, E, J.) Indeed,

to become an Isagenix Associate, an individual must first purchase Isagenix products or otherwise pay a fee. (*Id*. Exh. C.) This means that Isagenix's California Associates are first and foremost Isagenix *customers*. These Associates, therefore, are not unrelated third parties with no jurisdictional significance for Isagenix, but rather a reflection of the company's purposeful efforts to exploit the California market for commercial gain. As customers and distributors of Isagenix products in California, Isagenix Associates are a valid basis for subjecting the company to specific jurisdiction in the forum. *See Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 840 (9th Cir. 1986) (holding that "if the defendant directly solicits business in the forum state, the resulting transactions will probably constitute the deliberate transaction of business invoking the benefits of the forum state's laws"); *California Brewing Co.*, 2016 WL 1573399 at *5 (finding defendants expressly aimed their conduct at California in part because defendants sold their goods to third party retailers with the intent to develop a national market, including in California); *Guava Family, Inc. v. Guava Kida, LLC*, No. 12CV2239 WQH (BGS), 2013 WL 1742786, at *7 (S.D. Cal. Apr. 23, 2013) (finding that defendant had expressly aimed its conduct at California based upon evidence of sales in California and uncontroverted allegations of advertising directed into California).

Lindora has satisfied the second prong of the *Calder* test.

**c. Foreseeable Harm**

The third and final prong of the purposeful direction inquiry requires that Isagenix's actions "caused harm that it knew was likely to be suffered in the forum." *Brayton Purcell*, 606 F.3d at 1131 (citation omitted). The touchstone of this requirement is not the magnitude of the harm, but rather its foreseeability. *Yahoo! Inc.*, 433 F.3d at 1207. In an action for trademark infringement, it is foreseeable that the economic harm suffered by the owner of a trademark will be felt in the owner's home state. *Washington Shoe*, 704 F.3d at 679; *AirWair Int'l Ltd. v. Schultz*, 73 F. Supp. 3d 1225, 1237 (N.D. Cal. 2014) ("In the context of a suit for trademark

infringement, where a plaintiff uses its trademark in a state, and the defendant subsequently infringes that trademark in the same state, it is foreseeable that any infringement of those marks would create an injury which would be felt mainly in that state.") (internal quotation and citation omitted).

Here, Lindora alleges that Isagenix has infringed Lindora's trademarks in California, and online, and has caused harm to Lindora in the form of economic loss, loss of goodwill and reputation, and harm to Lindora's position in the market of providing weight loss goods and services. (FAC ¶¶ 20, 30, 33, 40, 41.) It is foreseeable that Lindora would suffer this harm in California, where Lindora maintains its principal place of business, operates more than 40 clinics, and uses the trademarks at issue to compete with Isagenix for costumers. (FAC ¶ 1; Mikulka Decl. ¶ 15.) Thus, Lindora has sufficiently alleged that Isagenix caused harm that it knew was likely to be suffered in California. *See, e.g.*, *California Brewing Co.*, 2016 WL 1573399 at *5 (finding it foreseeable that plaintiff would be harmed by trademark infringement in California when defendants knew plaintiff owned the mark and knew plaintiff maintained its principal place of business in California). The final prong of the purposeful direction test is thus satisfied.

* * *

In sum, Lindora has sufficiently alleged that Isagenix committed intentional acts, expressly aimed at California, causing foreseeable harm in the state. Accordingly, the Court finds that Lindora has established purposeful direction under the *Calder* effects test.

### 2. Claim Arising out of, or Related to, Forum Activities

The second prong of the specific jurisdiction test requires that plaintiff's claim arise out of, or relate to, defendant's forum-related activities. This requirement is meant to ensure that the contacts constituting purposeful direction are the contacts giving rise to the suit. *Bancroft & Masters*, 223 F.3d at 1088. In assessing this prong, courts use a traditional "but for" causation analysis—i.e., the plaintiff must show that

1  the claim would not have arisen "but for" the defendant's conduct directed at the

2  forum state. *Id*. "The Ninth Circuit has recognized that, in trademark infringement

3  actions, if the defendant's infringing conduct harms the plaintiff in the forum state,

4  this element is satisfied." *Nat. Wellness Ctrs. of Am., Inc. v. Golden Health Prods.,*

5  *Inc.*, No. C 12–05586 CW, 2013 WL 245594, at *5 (N.D. Cal. Jan. 22, 2013) (citing

6  cases).

7        Here, Lindora alleges that Isagenix has infringed the Lindora Marks by

8  providing infringing marketing materials to California-based Associates; using

9  infringing materials at Isagenix training workshops and promotional events held in

10  California; and using or allowing the Lindora Marks to be used on Isagenix-hosted

11  webpages, from which California consumers can purchase products. In support of

12  these allegations, Lindora provides evidence of the allegedly infringing materials and

13  webpage. (Exhs. H, J.) Lindora further alleges that Isagenix's California activities

14  have harmed Lindora's goodwill, business reputation, and market position in the

15  state. (FAC ¶¶ 9–11; 30–33, Mikulka Decl. ¶ 15.) Taken together, then, the record

16  establishes the requisite nexus between Isagenix's contacts with California and

17  Lindora's trademark infringement claim: "but for" Isagenix's California-related

18  activities and resulting harm, Lindora's claim would not have arisen. Accordingly,

19  Lindora has made a prima facie showing that its claim arises out of, or relates to,

20  Isagenix's California-related activities. *See California Brewing Co.*, 2016 WL

21  1573399 at *6 (finding that plaintiff's infringement claim arose out of defendant's

22  California activities where defendant used plaintiff's mark in marketing and sales

23  reaching California consumers, and plaintiff maintained its principal place of

24  business in the state); *Nat. Wellness Ctrs.*, 2013 WL 245594, at *5 (determining that

25  plaintiff's infringement claim arose out of defendants' California-related activities

26  where defendants' alleged infringement led to sales in California that harmed

27  plaintiff's business there).

28        Isagenix suggests that its contacts with California did not give rise to, or relate

– 17 –

15cv2754

1    to, Lindora's claim because Isagenix did not use the allegedly infringing marks in

2    connection with its California-related activities. (Mot. 11:2–6.) As evidence, Isagenix

3    points to a declaration by Kevin Adams, the Isagenix chief executive officer, in which

4    Adams states that "to the best of [his] knowledge" the infringing marks were not used

5    at certain Isagenix events in California, were not placed online or approved for use

6    online by Isagenix, or did not constitute infringement. (Suppl. Adams Decl. ¶¶ 6, 7,

7    8.)

8         These assertions are insufficient. First, the Adams Declaration itself does not

9    completely contradict Lindora's version of the facts—the declaration leaves

10   unchallenged Lindora's allegation that the Lindora Marks were used at Isagenix

11   annual conferences in California, and it does not dispute that the marks may have

12   been used in connection with marketing materials provided to Isagenix's California

13   Associates when they first join the company. On those allegations alone Lindora has

14   sufficiently alleged that its claim arises out of, or relates to, Isagenix's California-

15   related activities.

16        Second, and more fundamentally, Isagenix's assertions amount to a challenge

17   to the underlying merits of Lindora's claim, and as such, have no bearing on the

18   jurisdictional contacts alleged. *See Rosenberg v. Seattle Art Museum*, 42 F. Supp. 2d

19   1029, 1037 (W.D. Wash. 1999) ("The three-prong jurisdictional analysis used in the

20   Ninth Circuit does not allow for challenges to the underlying merits when

21   determining the Court's jurisdiction."); *cf.* Charles Alan Wright & Mary Kay Kane,

22   Law of Federal Courts 31 (7th ed. 2011) ("A court may have jurisdiction over a case

23   even though the case is one to which there is no merit."). Here, Lindora alleges that

24   Isagenix has infringed the Lindora Marks in connection with Isagenix's California-

25   related activities, and provides supporting materials. (Mikulka Decl. ¶¶ 9–11; Exhs.

26   J, M.) To the extent Isagenix denies these allegations and disputes these facts, the

27   Court draws all reasonable inferences, and resolves all factual disputes, in Lindora's

28   favor. *Fiore*, 688 F.3d at 575 ("We will draw reasonable inferences from the

complaint in favor of the plaintiff where personal jurisdiction is at stake, and will assume credibility."), *rev'd on other grounds*, 571 U.S. —, 134 S. Ct. 1115 (2014); *Metro. Life Ins. Co. v. Neaves*, 912 F.2d 1062, 1064 n. 1 (9th Cir. 1990) ("[I]n establishing its prima facie case, the documents submitted by the plaintiff are construed in the light most favorable to the plaintiff and all doubts are resolved in its favor.") (internal quotation marks and citation omitted). To allow Isagenix to avoid jurisdiction simply by challenging the merits of the claim or by denying all jurisdictional facts would erect too high a barrier to the assertion of personal jurisdiction. *See Theunissen v. Matthews*, 935 F.2d 1454, 1459 (6th Cir. 1991). Thus, Isagenix's challenge to the merits of the claim does not defeat Lindora's prima facie showing that the claim arises out of, or relates to, Isagenix's California contacts.

\* \* \*

In sum, Lindora has shown that Isagenix purposefully directed its activities at California and that these activities gave rise to Lindora's infringement claim. Accordingly, Lindora has satisfied the first two prongs of the specific jurisdiction test.

**3. Reasonableness**

Once a plaintiff satisfies the first two prongs of the specific jurisdiction test, the burden shifts to defendant to present a "compelling case" that the exercise of jurisdiction would be unreasonable. *Burger King*, 471 U.S. at 480. In determining whether jurisdiction is reasonable, the Court considers seven factors: (1) the extent of a defendant's purposeful interjection into the forum; (2) the burden on the defendant in defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the dispute; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum. *See CollegeSource*, 653 F.3d at 1079 (citing *Dole Food*, 303 F.3d at 1114). "No one factor is dispositive; a court must balance all seven."

1  *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1323 (9th Cir. 1998). The Court

2  considers each factor in turn.

3  **a. Purposeful Interjection**

4  Even if there is sufficient interjection into the forum state to satisfy purposeful

5  direction, "the degree of interjection is a factor to be weighed in assessing the overall

6  reasonableness of jurisdiction under the reasonableness prong." *Panavision*, 141 F.3d

7  at 1323 (quoting *Core-Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482, 1488 (citation

8  omitted)). Here, the degree of interjection is substantial. Isagenix has more

9  Associates in California than in any other state. (Suppl. Adams Decl. ¶ 9.) It sells

10  more products to purchasers in California than in any other state. *Id*. It holds

11  promotional events, training workshops, and annual conferences in the state. (Opp'n,

12  Exh. E.) Isagenix also knew, based on Lindora's cease-and-desist letter, that the harm

13  caused by the alleged infringement would be felt in the state. (*Id*. Exh. M.) These

14  contacts demonstrate extensive interjection into California. Accordingly, the Court

15  finds this factor weighs strongly in favor of reasonableness. *See Panavision*, 141 F.3d

16  at 1323 (finding more purposeful interjection where defendant knew infringing

17  conduct would likely injure plaintiff in the forum); *Guava Family*, 2013 WL

18  1742786, at *8 (S.D. Cal. Apr. 23, 2013) (finding purposeful interjection weighed in

19  favor of reasonableness where defendant's interjection into California included

20  selling products with the allegedly infringing mark, distributing marketing materials

21  in the state, and shipping goods to the state).

22  **b. Burden on Defendant**

23  The second factor concerns the burden on the defendant of defending in the

24  forum. Here, any burden on Isagenix posed by litigating in California would be

25  minimal. Although Isagenix is based in Arizona, it is also an international, multi-

26  billion dollar company that conducts substantial business activity in California.

27  California and Arizona are, of course, neighboring states, and Isagenix has not argued

28  that the distance between the fora poses a travel inconvenience "so great as to

1   constitute a deprivation of due process." *Panavision*, 141 F.3d at 1323 (quoting
2   *Caruth v. Int'l Psychoanalytical Ass'n*, 59 F.3d 126, 128–29 (9th Cir. 1995)). To be
3   sure, litigating in California poses some inconvenience for Isagenix. However, "with
4   the advances in transportation and telecommunications and the increasing interstate
5   practice of law, any burden is substantially less than in days past." *Menken v. Emm*,
6   503 F.3d 1050, 1060 (9th Cir. 2007) (quoting *CE Distrib., LLC v. New Sensor Corp.*,
7   380 F.3d 1107, 1112 (9th Cir. 2004)). Thus, to the extent this factor weighs in favor
8   of Isagenix, it does so only slightly. *See, e.g.*, *Panavision*, 141 F.3d at 1323 (finding
9   that "in this era of fax machines and discount air travel" it was not "constitutionally
10  unreasonable" to require a resident of Illinois to litigate in California).

11  **c. Conflict with the Sovereignty of Defendant's State**

12  Isagenix does not argue that the exercise of jurisdiction in California would
13  conflict with the sovereignty of Arizona. Although Arizona has some interest in
14  regulating the conduct of its corporations, the claims here involve questions of federal
15  and California law, and the case would be in federal court whether litigated in
16  California or Arizona. Furthermore, "concerns about conflicts of sovereignty are
17  reduced" when an out-of-state corporation "takes active steps to do business in the
18  forum state[.]" *Falco v. Nissan N. Am. Inc.*, 96 F. Supp. 3d 1053, 1061 (C.D. Cal.
19  2015). Thus, the Court finds this factor to be largely neutral.

20  **d. California's Interest**

21  The fourth factor concerns the forum state's interest in adjudicating the
22  dispute. Here, Isagenix asserts that California has no greater interest in providing a
23  forum for this particular litigation than Arizona. (Mot. 11:21–23.) The Court
24  disagrees. "California has a strong interest in discouraging trademark infringement
25  injuries that occur within the state." *AirWair Int'l Ltd.*, 73 F. Supp. 3d at 1240; *see*
26  *also Starlight Int'l, Ltd. v. Lifeguard Health, LLC*, No. C 08-1894 RS, 2008 WL
27  2899903, at *7 (N.D. Cal. July 22, 2008) (recognizing "California's legitimate
28  interest in protecting against alleged violations of a trademark registered to a

California company through products sold to Californians"). That interest is especially strong here where Lindora alleges that California residents were both targets of the infringement, and also used to perpetuate it. *Cf. AirWair Int'l*, 73 F. Supp. 3d at 1240 ("California has an interest in adjudicating actions in which a California company is used to perpetuate trademark infringement.") Thus, this factor weighs in favor of reasonableness.

**e. Efficient Resolution**

The efficient resolution factor "focuses on the location of the evidence and witnesses[.]" *Panavision*, 141 F.3d at 1323. However, "[i]t is no longer weighed heavily given the modern advances in communication and transportation." *Id*. Here, Isagenix argues that Arizona is the most efficient forum because the company's witnesses and evidence are located there. In response, Lindora argues that California is the most efficient forum because Novokolsky resides in the state and is central to the claims. On balance, this factor probably favors Isagenix. But given that Novokolsky and her customers are located in California, and considering that this factor is not weighed heavily, the Court finds this factor favors Isagenix only slightly.

**f. Convenience to Plaintiff**

In the Ninth Circuit, "the plaintiff's convenience is not of paramount importance" to the reasonableness inquiry. *Dole Food*, 303 F.3d at 1116; *see also Panavision*, 141 F.3d at 1324 ("In evaluating the convenience and effectiveness of relief for the plaintiff, we have given little weight to the plaintiff's inconvenience."). Lindora would presumably find it more costly and burdensome to litigate this case in Arizona, but this burden, for the same reasons that apply when assessing the burden on Isagenix of litigating in California, is slight. Accordingly, the Court finds this factor to be neutral.

**g. Alternative Forum**

Isagenix asserts that Arizona is an available alternative forum for this litigation. (Mot. 11:20–21.) However, "[w]hether another reasonable forum exists

1  becomes an issue only when the forum state is shown to be unreasonable."
2  *CollegeSource*, 653 F.3d at 1080 (quoting *Bauman v. DaimlerChrysler Corp.*, 644
3  F.3d 909, 929 n. 19 (9th Cir. 2011), *rev'd on other grounds*, 571 U.S. —, 134 S. Ct.
4  746 (2014)). Isagenix has not made that showing. Thus, this factor does not impact
5  the Court's analysis.

6        Having balanced the relevant factors, and noting that the two factors that weigh
7  in favor of Isagenix only do so slightly, the Court finds that Isagenix has not presented
8  a compelling case that the exercise of jurisdiction in California would be
9  unreasonable.

10                                    *  *  *

11        Lindora has made a prima facie showing that Isagenix purposefully directed
12  its activities at California, and that these activities gave rise to, or relate to, Lindora's
13  claim. For its part, Isagenix has not presented a compelling case that the exercise of
14  jurisdiction would be unreasonable. Thus, the Court concludes that Isagenix is
15  subject to specific jurisdiction in California with respect to Lindora's infringement
16  claim. Furthermore, under the doctrine of pendent personal jurisdiction, Isagenix is
17  subject to personal jurisdiction with respect to the remainder of Lindora's claims. *See*
18  *Picot*, 780 F.3d at 1211 ("If personal jurisdiction exists over one claim . . . the district
19  court may exercise pendent personal jurisdiction over any remaining claims that arise
20  out of the same 'common nucleus of operative facts' as the claim for which
21  jurisdiction exists.") (citing *Action Embroidery Corp. v. Atl. Embroidery, Inc.*, 368
22  F.3d 1174, 1181 (9th Cir. 2004)). Isagenix's motion to dismiss for lack of personal
23  jurisdiction is therefore denied.

24        **C. Venue**

25        Isagenix also moves to dismiss the complaint under Rule 12(b)(3) on the
26  grounds that venue is improper in the Southern District of California. When venue is
27  challenged, the court must determine whether the case falls within one of the three
28  categories set out in the general venue statute, 28 U.S.C. § 1391. *Atl. Marine Constr.*

*Co. v. U.S. Dist. Court for W. Dist. of Texas*, 571 U.S. —, 134 S. Ct. 568, 577 (2013). Under § 1391(b), venue is proper in, among other districts, "a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located." 28 U.S.C. § 1391(b)(1). Plaintiff bears the burden of showing that venue is proper. *Piedmont Label Co. v. Sun Garden Packing Co.*, 598 F.2d 491, 496 (9th Cir. 1979).

Section 1391 includes specific provisions for determining the residency of corporations for venue purposes. Most pertinent here is § 1391(d), which governs the residency of corporations in states with multiple judicial districts. Section 1391(d) provides that when a defendant corporation is subject to personal jurisdiction in a state with multiple judicial districts, "such corporation shall be deemed to reside in any district in that State within which its contacts would be sufficient to subject it to personal jurisdiction if that district were a separate State." 28 U.S.C. § 1391(d). If there is no such district, "the corporation shall be deemed to reside in the district within which it has the most significant contacts." *Id*.

**1. Venue under § 1391(b)(1)**

Because California is a state with multiple judicial districts, the Court must conduct a district-specific jurisdictional analysis, treating the Southern District of California as a separate state. For the reasons below, the Court finds that Lindora has made a prima facie showing that Isagenix's contacts in this district are sufficient to confer specific jurisdiction.

First, Lindora alleges, and provides supporting evidence, that Isagenix holds training workshops, promotional tours, and annual conferences *in this judicial district*, at which it trains thousands of Associates on marketing, sales, and distribution of Isagenix products. (FAC ¶ 10; Opp'n, Exh. E.) Isagenix does not deny that it directs business in this district through these events, but emphasizes these events are not exclusive to this district. (Suppl. Adams Decl. ¶¶ 3, 4.) This assertion not only fails to contradict Lindora's allegations, but is also beside the point—a

1   company can purposefully direct its business activities at more than one district.
2   Here, the Court finds that the allegations and evidence specific to this judicial district
3   involve intentional acts, expressly aimed at the district, causing reasonably
4   foreseeable harm.

5       Second, Lindora shows that one of the few Isagenix Associates to have
6   earned $1 million or more with the company is based in this judicial district,
7   (Opp'n, Exh. F), and notes that Defendant Novokolsky has been described by
8   Isagenix as a "Millionaire in Action," (*Id*. Exh. G). These contacts are further
9   evidence of Isagenix activities purposefully directed at this district. Isagenix
10  emphasizes that Novokolsky is currently inactive, but Lindora provides evidence
11  that Novokolsky's back office Isagenix webpage, allegedly using the Lindora
12  Marks, was accessible at the time the suit commenced. (*Id*. Exhs. G, H.) Isagenix
13  also argues that Novokolsky has only earned tens of thousands of dollars in this
14  district, but this level of earnings is more than sufficient for jurisdictionally relevant
15  contact, where the earnings in question allegedly stem, in part, from the use of
16  infringing marketing materials. *See, e.g.*, *Starlight Int'l*, 2008 WL 2899903, at *5
17  (finding that defendant's $6,829 of direct and internet sales to California consumers
18  were sufficient evidence of purposeful availment of the forum).

19      Third, Lindora clearly alleges that its infringement claim arises out of, or
20  relates to, Isagenix's district-related business activities, including the provision of
21  infringing materials to Isagenix Associates in the district and the alleged use of
22  infringing materials at Isagenix training workshops and promotional events held in
23  the district. (FAC ¶ 9, 22; Mikulka Decl. ¶¶ 10, 11; Opp'n, Exh J.) Isagenix again
24  challenges the merits of the infringement claim, and argues that Isagenix cannot be
25  affiliated with this district based on the presence of its Associates, but these
26  arguments fail for the same reasons discussed in detail above.

27      Finally, considering the seven factors under the reasonableness inquiry,
28  Isagenix has not shown that personal jurisdiction in this district is unreasonable.

While the purposeful interjection factor may not favor Lindora as strongly as it does when considering personal jurisdiction in California as a whole, none of the other factors tilt any more favorably toward Isagenix. Thus, Isagenix has not presented the requisite compelling case that jurisdiction in this district is unreasonable.

Because the Court finds Isagenix's contacts with this district sufficient to subject it to specific jurisdiction if the district were treated as a separate state, Isagenix is deemed to reside in this district under § 1391(d). Accordingly, venue in this district is proper under § 1391(b)(1)—both defendants are residents of California, and this district is "a judicial district in which any defendant resides."[4]

### 2. Venue under § 1391(b)(2)

Venue is also proper under § 1391(b)(2), which allows a civil action to be brought in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(b)(2). "In a trademark suit brought under the Lanham Act, a 'substantial part' of the events giving rise to the claims occur in any district where consumers are likely to be confused by the accused goods, 'whether that occurs solely in one district or in many.'" *Allstar Mktg. Grp., LLC v. Your Store Online, LLC*, 666 F. Supp. 2d 1109, 1128 (C.D. Cal. 2009) (quoting *Golden Scorpio*, *v. Steel Horse Bar & Grill*, 596 F. Supp. 2d 1282, 1286 (D. Ariz. 2009) (quotation marks and citations omitted)).

Here, Lindora operates at least one of its weight loss clinics in the district, an interactive website accessible in the district, and alleges that Isagenix uses infringing materials to promote and sell its products in the district. Thus, Lindora and Isagenix compete for customers in this district. Given this overlapping commercial activity,

---

[4] The Court notes that even if Isagenix's contacts with the Southern District of California were insufficient to confer specific jurisdiction in the district, venue would nonetheless be proper. This is because the Court has already concluded that Isagenix is subject to specific jurisdiction in California, which means that under § 1391(d) Isagenix is a resident of at least one judicial district in the state. Thus, given that Isagenix is a resident of California and Novokolsky is a resident of this district, venue in this district is proper under § 1391(b)(1)—both defendants are residents of California, and this district is "a judicial district in which any defendant resides."

1    and Isagenix's alleged use of infringing materials in carrying out that activity, there

2    is a likelihood of customer confusion in this district sufficient to support venue. *See*

3    *Adobe Sys. Inc. v. Childers*, No. 5:10–cv–03571–JF/HRL, 2011 WL 566812, at *8

4    (N.D. Cal. Feb. 14, 2011) (finding a likelihood of customer confusion in the district,

5    even though there was no evidence of sales in the district, because defendants had

6    "aimed their activities" by entering into contracts with companies in the district and

7    advertising their relationship with these companies on its website); *French Transit,*

8    *Ltd. v. Modern Coupon Sys., Inc.*, 858 F. Supp. 22, 26 (S.D.N.Y. 1994) ( "[I]f a

9    defendant targets the District by advertising and actively pursues efforts to market

10   the product by making sales presentations and selling even a relatively nominal

11   amount of products in the District, such actions may be regarded as constituting a

12   substantial part of events giving rise to the claim.").

13       Isagenix attempts to defeat venue by arguing that the allegedly infringing

14   materials originated in Arizona, and that Isagenix's contacts with Associates in this

15   district are irrelevant. These assertions are unavailing. First, the fact that Isagenix

16   may have infringed the Lindora Marks in Arizona does not contradict allegations that

17   infringing materials were used to carry out commercial activity in this district.

18   Second, Isagenix's Associates are undoubtedly relevant given that the provision of

19   infringing materials to these Associates, and their subsequent use of those materials,

20   is the primary means by which consumers in the district are likely to be confused.

21   Thus, the Court finds that a substantial part of the events giving rise to the claim

22   occurred in this district. Therefore, venue in this district is proper under § 1391(b)(2).

23   * * *

24       Because venue is proper in this district under 28 U.S.C. §§ 1391(b)(1) and

25   (b)(2), Isagenix's motion to dismiss for improper venue is denied.

26   **D. Motion to Sever Claims**

27       Finally, Isagenix moves to sever the claims against it, and then transfer those

28   claims to the District of Arizona. Isagenix argues that the claims against the

defendants do not arise out of the same transaction or occurrence, and that joinder runs counter to principles of fundamental fairness. (Mot. 13–18.) The Court disagrees.

The starting point for analyzing a motion to sever claims is Federal Rule of Civil Procedure 20(a). Under Rule 20(a), multiple defendants may be joined together in one action if: (1) the plaintiff asserts any right to relief arising out of the same transaction, occurrence, or series of transactions or occurrences; and (2) the action involves any question of law or fact common to all defendants. *Coughlin v. Rogers*, 130 F.3d 1348, 1350 (9th Cir. 1997). This permissive joinder rule "is to be construed liberally in order to promote trial convenience and to expedite the final determination of disputes, thereby preventing multiple lawsuits." *League to Save Lake Tahoe v. Tahoe Reg'l Planning Agency*, 558 F.2d 914, 917 (9th Cir. 1977).

Even if the requirements of Rule 20(a) are met, courts must nonetheless examine whether permissive joinder comports with principles of fundamental fairness or would otherwise result in prejudice to either side. *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1296 (9th Cir. 2000) (citing *Desert Empire Bank v. Insurance Co. of N. Am.*, 623 F.2d 1371, 1375 (9th Cir. 1980)). If the court finds that joinder does not comport with principles of fundamental fairness, it has broad discretion to sever a trial or any claims against a party. *See Zaldana v. KB Home*, No. C–08–3399 MMC, 2010 WL 4313777, at *1 (N.D. Cal. Oct. 26, 2010); Fed. R. Civ. P. 21. As the party seeking separate trials, Isagenix bears the burden of proving that separation of claims is necessary. *Brighton Collectibles, Inc. v. RX Texas Leather Mfg.*, No. 10–CV–419–GPC (WVG), 2013 WL 2631333, at *2 (S.D. Cal. June 11, 2013) (citation omitted).

**1. Same Transaction or Occurrence**

Isagenix argues that the claims against Isagenix and Novokolsky do not meet the same transaction requirement because the allegations against Isagenix concern infringement in connection with its website and general marketing efforts, while the

allegations against Novokolsky concern her use of infringing marks on her Isagenix-hosted webpage. (Mot. 15:4–16.) In Isagenix's view, even if the defendants infringed the Lindora Marks, each defendant's infringement was "entirely independent" of the other's. (*Id.* 15:15.)

"The Ninth Circuit has interpreted the phrase 'same transaction, occurrence, or series of transactions or occurrences' to require a degree of factual commonality underlying the claims." *Bravado Int'l Grp. Merch. Servs. v. Cha*, No. CV 09-9066 PSG (CWx), 2010 WL 2650432, at *4 (N.D. Cal. June 30, 2010). The rule simply requires "related activities" and "similarity in the factual background of a claim." *Jacques v. Hyatt Corp.*, No. C 11–05364 WHA, 2012 WL 3010969, at *3 (N.D. Cal. July 23, 2012) (citing *Bravado*, 2010 WL 2650432, at *4).

Here, the Court finds that Lindora's claims have sufficient transactional relatedness to satisfy the same transaction requirement. Lindora alleges not only that Isagenix and Novokolsky engaged in trademark infringement, but that Isagenix intentionally provided infringing marketing materials to Novokolsky as part of the company's efforts to promote and sell Isagenix products. (FAC ¶¶ 21, 22; Exh. J.) Thus, this case is distinguishable from cases such as *Golden Scorpio Corp. v. Steel Horse Bar & Grill*, 596 F. Supp. 2d 1282 (D. Ariz. 2009), cited by Isagenix, where the court found joinder improper because multiple defendants had independently infringed the same trademark. Here, defendants are alleged to have engaged in related marketing activities, using the same infringing marks, in a common effort to sell Isagenix products. To the extent Novokolsky used the allegedly infringing materials to sell Isagenix products, both her and Isagenix reaped the rewards. Thus, in light of this shared nucleus of marketing activity, the Court finds that Lindora's claims arise out of the "same transaction, occurrence, or series of transactions or occurrences." *See Bravado*, 2010 WL 2650432, at *5 (finding Rule 20's same transaction requirement met where plaintiff alleged that defendants were part of same chain of distribution and the supplier provided retailer with infringing merchandise); *Jacques*,

2012 WL 3010969, at *3 (finding same "series of occurrences" requirement satisfied where co-defendants' conduct was causally related and together contributed to plaintiffs' injury).

Having found that Lindora satisfies Rule 20's same transaction requirement, and noting that the parties do not dispute the commonality requirement, the Court finds that Lindora has met the Rule 20 requirements for permissive joinder.

### 2. Fundamental Fairness

The Court turns now to the question of whether joinder in this case comports with principles of fundamental fairness. The factors relevant to this inquiry include (1) whether severance would promote judicial economy; (2) whether the claims involve different witnesses and documentary proof; and (3) whether joinder would cause prejudice.[5] *Jacques*, 2012 WL 3010969, at *2 (citing *SEC v. Leslie*, No. C 07–3444, 2010 WL 2991038, at *4 (N.D. Cal. July 29, 2010)); *see also Kehr ex. rel.. Kehr v. Yamaha Motor Corp., U.S.A.*, 596 F. Supp. 2d 821, 826 (S.D.N.Y. 2008). The Court addresses each factor in turn.

### a. Judicial Economy

With respect to the first factor, the Court finds that joinder, rather than severance, best serves judicial economy because there is substantial overlap of factual and legal issues underlying Lindora's claims. These issues include the validity of the trademark, the use of the trademark in commerce, the willfulness of the alleged

---

[5] The Court notes that Isagenix cites a different standard for severance based on *Pipeline Techs., Inc. v. Telog Instruments Inc.*, No. CV-13-02104-PHX-SPL, 2014 WL 5241719 (D. Ariz. Oct. 15, 2014). The Court, however, finds the standard outlined in *Jacques*, 2012 WL 3010969, at *2, and related cases, to be the more appropriate approach, both because it better reflects Isagenix's burden to demonstrate that separate trials are necessary and better aligns with Ninth Circuit dicta on the subject in *Coleman v. Quaker Oats Co.*, 232 F.3d 1271 (9th Cir. 2000). Although the Court does not employ the standard cited by Isagenix, it nonetheless fully considers Isagenix's arguments regarding prejudice and the risk of jury confusion, the peripheral nature of the claims against Novokolsky, and the potential preclusive effect of a separate trial against Isagenix on a later trial against Novokolsky. These arguments retain their force and relevance under the framework employed here.

infringement, the likelihood of customer confusion, and the nature of Isagenix's role in promoting the use of the Lindora Marks by its Associates. Given this overlap in issues, and the likely overlap in witnesses and evidence discussed in more detail below, conducting two separate trials would involve significant duplication of effort, producing inefficiencies rather than economization. *See Brighton Collectibles*, 2013 WL 2631333, at *5 (concluding that severance would not serve judicial economy where two separate trials would produce a significant amount of overlap in witnesses, issues of fact and law, and defenses). Thus, this factor weighs in favor of joinder and against severance.

Isagenix argues that severance might produce more efficiency than joinder because the outcome of Lindora's claims against Isagenix could help dispose of Lindora's claims against Novokolsky. Specifically, Isagenix contends that it may succeed in establishing that its use of the Lindora Marks is not likely to cause confusion among consumers, which if true as to Isagenix would likely be true as to Novokolsky. (Mot. 17:4–11.) The implication is that the determination of issues in a first trial against Isagenix would streamline a second trial against Novokolsky.

The mere possibility of preclusion, however, is insufficient to outweigh the more certain efficiency gains provided by joinder in this case. The availability of issue preclusion depends on several factors—including whether the issue to be precluded in a second trial was actually litigated in a first—and the Court cannot predict whether circumstances will permit its use. *See In re Palmer*, 207 F.3d 566, 568 (9th Cir. 2000). For example, although Novokolsky may have a strong argument for asserting issue preclusion defensively against Lindora based on an issue litigated in a first trial, Lindora's ability to assert issue preclusion offensively against Novokolsky in a second trial would be much more uncertain. *See, e.g.*, *In re Gottheiner*, 703 F.2d 1136, 1139 (9th Cir. 1983) ("Collateral estoppel is not generally applicable unless there exists either identity or privity between the parties to the relevant litigation."). Should preclusion be unavailable in a second trial, previously

1    determined issues would have to be litigated again, resulting in duplication of effort.
2    In this circumstance, severance would generate the very inefficiencies it was intended
3    to avoid. Ultimately, then, Isagenix's reliance on the possibility of issue preclusion
4    does not show that severance would promote judicial economy better than joinder.

5            **b. Witnesses and Documentary Proof**

6            Although the parties do not address this factor directly, the most important
7    witnesses—such as Isagenix's CEO, Isagenix officials responsible for sales,
8    marketing, and distribution, Novokolsky, and related Isagenix Associates—appear to
9    overlap in both cases. Separate trials would require these witnesses to travel and
10   testify twice, resulting in inconvenience, inefficiency, and added costs. *Brighton*
11   *Collectibles*, 2013 WL 2631333, at *6 (finding that severance was not justified where
12   the same witnesses would need to travel and testify at two separate trials, and the
13   parties would incur substantial additional attorney's fees). In addition, documentary
14   proof such as Isagenix marketing materials and Isagenix's policies and procedures is
15   highly relevant to both sets of claims. Separate trials would require this evidence to
16   be presented twice, with the attendant costs in time, money, and burden on the courts.
17   Overall, the Court finds that the overlap in witnesses and evidence weighs in favor
18   of joinder and against severance. *See Jacques*, 2012 WL 3010969, at *6
19   (circumstances weighed in favor of joinder where majority of potential witnesses and
20   documentary evidence were overlapping in both claims).

21           **c. Prejudice**

22           Isagenix argues that joinder of claims would prejudice Isagenix because it
23   would give Novokolsky an opportunity to link her alleged infringement with
24   Isagenix, thereby confusing the jury. (Mot. 18:11–12; Reply 9:7.) This argument
25   misses the mark for at least two reasons. First, the extent to which Isagenix and
26   Novokolsky's alleged infringement are interrelated is a core part of Lindora's claims,
27   regardless of whether the claims are tried separately or together. That is to say,
28   whether Novokolsky testifies as a witness in a suit against Isagenix, or is tried as a

co-defendant alongside Isagenix, Isagenix would still need to defend itself against allegations that it contributed to infringement by Novokolsky and other Associates. Severance does not eliminate the risk of prejudice. Indeed, the risk of prejudice in this case is more a function of Isagenix's network marketing model, which emphasizes collaboration between Isagenix and its Associates, than a function of joinder.

Second, any risk of prejudice to Isagenix posed by joinder can be mitigated with protective measures, such as careful jury instructions, bifurcation of issues, or a special verdict form to protect against jury confusion. One or more of these measures would allow the jury to separate the allegations and evidence relevant to each claim, ensure that evidence relevant to multiple claims is considered properly, and minimize the risk of improper imputations of liability between the defendants. *See Jacques*, 2012 WL 3010969, at *5. The Court is confident these commonly used measures would guard against unfair prejudice, and Isagenix makes no showing to the contrary. Thus, this factor does not weigh in favor of severance.

Isagenix also suggests that joinder involves prejudice because the claims against Novokolsky are "peripheral" to the claims against Isagenix. (Mot. 16:21–17:3.) The Court disagrees. Novokolsky is an apparently successful Isagenix Associate who maintains an Isagenix-hosted webpage that uses the allegedly infringing marks. A core part of the allegations is that Isagenix *provided* infringing materials to Novokolsky, or otherwise approved her use of the Lindora Marks. Thus, the Court finds that Novokolsky is not peripheral to the claims against Isagenix, but rather an important part of those claims. And even if Novokolsky were peripheral, that alone would not obligate the Court to sever the claims here where joinder would promote judicial economy and any prejudice can be mitigated by the protective measures discussed above.

*   *   *

In sum, Lindora satisfies the Rule 20 joinder requirements, and Isagenix has

not shown that joinder does not comport with principles of fundamental fairness. There is sufficient overlap in witnesses, documentary proof, issues of fact and law, and defenses such that joinder will economize judicial resources, and any prejudice to Isagenix can be mitigated by proper jury instructions and a special verdict form. Thus, Isagenix has not met its burden to demonstrate that separate trials are necessary. Accordingly, the Court DENIES Isagenix's motion to sever claims.[6]

## IV.   CONCLUSION & ORDER

The personal jurisdiction requirement is "a function of the individual liberty interest preserved by the Due Process Clause." *Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702, n. 10 (1982). Where a court lacks personal jurisdiction over a party, it lacks the power to enter binding judgments against that party. A challenge to a court's personal jurisdiction is thus a challenge to the legitimacy of the court's authority. The Court considers such challenges with the seriousness befitting the constitutional principle involved.

Here, Isagenix argues that the Court has neither general nor specific personal jurisdiction over it. The Court agrees that Lindora fails to make a prima facie case for general jurisdiction. Isagenix is neither incorporated in California nor maintains its principal place of business here, and Lindora fails to demonstrate that the magnitude of Isagenix's business activity in California, as compared to other fora, renders Isagenix essentially at home in the state. However, the Court finds that specific jurisdiction over Isagenix is proper. Lindora makes a prima facie showing that Isagenix has purposefully directed its activities at California, and that those activities gave rise to Lindora's claim, while Isagenix has not presented a compelling case that the exercise of jurisdiction is unreasonable. In short, Lindora has shown that

---

[6] Isagenix's request to transfer the claims against it to the District of Arizona is premised upon those claims first being severed. (Mot. 1:20–23, 19:3–4.) Because the Court denies Isagenix's motion to sever claims, the Court does not consider whether transfer of the single action against Isagenix and Novokolsky to the District of Arizona is appropriate.

1   Isagenix has sufficient contacts with California such that the exercise of personal

2   jurisdiction comports with fair play and substantial justice. Therefore, the Court

3   **DENIES** Isagenix's motion to dismiss for lack of personal jurisdiction.

4         Venue is proper in this district under 28 U.S.C. §§ 1391(b)(1) and (b)(2)

5   because both Isagenix and Novokolsky reside in this district, and because a

6   substantial part of the events giving rise to Lindora's claim occurred in this district.

7   Accordingly, Isagenix's motion to dismiss for improper venue is also **DENIED**.

8         Finally, the Court **DENIES** Isagenix's motion to sever claims. The Court is

9   satisfied that joinder is proper under Rule 20(a), and Isagenix fails to show that

10  joinder does not comport with principles of fundamental fairness. Accordingly, the

11  claims against Isagenix and Novokolsky will proceed in this Court as a single action.

12        In light of the Court's disposition of the instant motion, Novokolsky's motion

13  to stay (ECF No. 19) and the parties' joint motion to continue proceedings on the

14  motion to stay (ECF No. 24) are **TERMINATED AS MOOT**.

15        **IT IS SO ORDERED.**

16

17  **DATED:  August 1, 2016**

18                                          **Hon. Cynthia Bashant**
                                            **United States District Judge**

19

20

21

22

23

24

25

26

27

28

– 35 –

15cv2754